Your Honor, the first case of the morning call, 2-11-0189, People of the State of Illinois v. Aaron W. Null, on behalf of Marie Tappelant, Mr. R. Christopher White, on behalf of the people, Mr. Marshall Steele. Both sides ready to proceed? You may proceed when you're ready. Good morning. I'm Anthony Zakort. I'm Chris White, representing Aaron Null. Mr. Null was denied a fair trial where, at his murder trial, the state presented the testimony of several witnesses in order to demonstrate a history of prior marital discord between he and his wife, Brynn. Contrary to the trial court's ruling, these instances of prior discord did not establish motive to kill, intent to kill, or any absence of mistake. Now, when you say, just to clarify a matter, you say marital discord, it went beyond that. Could it be characterized as evidence of domestic, instances of domestic abuse? Um... We regard discord to be an argument between spouses. I mean, it wasn't on that level, was it? Well, I think it was. And in fact, as I'll get to later, the blood evidence that was recovered actually was some of his blood evidence as well. So I think some of... a lot of it, I think, was not necessarily his abuse towards her, but I think it could be characterized as marital discord. We really don't know, and that's part of the problem here, is we really don't know what the relationship was between these parties, other than what some of these witnesses said they saw, or not even said they saw, one of them said they saw something. The rest of them said what she had told him or told them. Let me ask you this. It was pretty clear from the evidence and from the hearing on the motion to eliminate that the trial court kept out and excluded all of the hearsay statements to police and the written statements that the victim, Bryn Nall, had written on the orders of protection, the divorce, correct? Correct. And the trial court also kept out another witness who she disclosed the defendant had said he would kill her, correct? Correct. So it was clear the trial court did exercise its discretion, and the state never invoked forfeiture by wrongdoing, correct? Correct. Sure. Sure. I mean, certainly some of the state, some of the court's decisions were proper in this case. We're not disputing that. I mean, because it foreclosed the admission of some of this evidence doesn't mean that it should have allowed. I don't think it's really the court's position in this case, particularly in a situation where there is no body, to sort of split the difference and say, well, because we're keeping out this evidence, we'll go ahead and let this stuff in. A lot of it, for example, as I said earlier, like the comments or the testimony or the statements of Bryn, for example, regarding her harm were still statements that she had given to friends, so we still don't know what the entire situation was that she was discussing at that time. And she said, for example, I think she had an injury behind her ear, one behind her face, I think it was one on her back. She had to show the police officer at that time where it was. She had to point it out to him because it wasn't so obvious. And in that context, everyone seemed to come to the conclusion that it was the abuse by the defendant, but it's really only the statements of the complainant at that time that we have. Obviously, I think it's safe to say that she had been hit by someone, but we don't know if she had also hit someone, if that someone was in fact the defendant. Let me see if I can call out the essence of your position. You recognize the statute that says evidence of domestic violence is admissible. Case law is well settled. You can't have propensity evidence admitted, but evidence that would bear a motive intent is admissible. You don't quarrel with the law. No. Are you saying here it was the nature and quality of the evidence that should have precluded its admissibility? There was too many instances that came in. What exactly are you saying about this? I think it's some of that. It's certainly the quality because it wasn't. Much of it was either months, in some cases years or so prior to the alleged incident, which, again, we don't know really when that incident occurred because the time of death, and I think that's really what part of the difference here is between just about any other murder case, because we don't really know when the murder occurred, if a murder occurred. Wait a minute. Okay. The state's argument, and the defense in the opening statement said there was prior domestic abuse, domestic violence, and it was physical. That was in the opening statement. Okay. And the evidence was that Brynn Nall had no injuries prior, no bleeding injuries prior to her disappearance, correct? Immediately prior to? Correct. That was a testimony from the witnesses. Right. Some of the state's witnesses. Sure. Okay. And where did her blood, the blood, I assume you looked at the photographs and the bloodstained mattress. Right. That's not circumstantial evidence that the murder occurred in the hours before the return of Mr. Lamb? I don't know. There was no expert testimony saying when the blood got there, where the blood got there, that the blood all got there at the same time. Was it numerous bleeding incidents? So is your argument now a reasonable doubt argument, or is your argument too much evidence of domestic violence? No. It's the probative value of that evidence was not overcome by its undue prejudice. I think you have a situation here where you've got, because there is no body, you have sort of a case where you've got a lot of witnesses who came out afterwards, after the disappearance of Brynn Nall, and said, you know, yeah, you know, this is kind of significant now that you mention it. In most cases, you've got a body. You can say the cause of death of this person was this, and the time of death of this incident was such and such time. You don't have that here. What you have is her disappearance, and you assume from this disappearance that, well, because she's disappeared, then obviously the defendant must have killed her. And if the defendant killed her, let's see if there are some statements that say, well, about this time I did hear something that sounded like what could have been marital discord or abuse, because even the statements of, I believe her name was Wilson, the two women who lived next door, came forward not at the time they heard these noises and the dogs barking and the glass breaking to such an extent that they thought there could have been a murder which occurred. They came forward after the police had asked months, and in some cases years, after they heard this. And I think when you've got situations like that where you have the complainant making statements or other people claiming they saw incidents months and, in some cases, years before, although it may be relevant, it may very well be relevant, it may even be propensity evidence under the statute, although there are some problems, I think, as far as the proximity of the time charged for the offense and some of those things, so it may not even be relevant propensity evidence. But to the extent that it is relevant propensity evidence, it's certainly much more prejudicial than it is probative in this type of situation. So the fact that, let me just, I want to get this straight. You're saying that the fact that there's no body makes the domestic violence less relevant in this case? Is that what you're saying? It makes the reports of domestic violence less relevant. So the defendant benefits by getting rid of the body if the circumstantial evidence suggests that he got rid of the body? No, the state doesn't benefit from not having the fundamental evidence here of when a murder occurred, the cause of death, the time of death, those types of things that normally it has and has to find evidence to support those particular narrow fact circumstances. The state certainly doesn't get the benefit of saying, well, no one's seen her in a few months, probably died because we know who's been beating on her, probably the defendant, therefore he probably killed her and because we can't find her, he therefore must have concealed the body. He was on probation for two acts of domestic violence, two convictions for domestic battery that had occurred within the preceding six months, correct? Right. And he was still on probation, correct? I believe he was, yes. Correct me if I'm wrong. I believe the second conviction for domestic battery would have been a felony. He already had a prior. Right. So he escaped a felony by pleading guilty and reaching some kind of an agreement for the two domestic batteries against Brindol, correct? Okay. Right. Is that correct? Mm-hmm. Doesn't that pattern of abuses, it wasn't important for the jury to hear what the relationship was like all the way up into including her disappearance for purposes of understanding what may have happened that night? Well, certainly prior relationship between the parties is going to have some relevance, but in a situation like this where you've got different people who have come forward, not at the time these events occurred, but much more afterwards. In fact, I think the charges were actually brought about five years after all of this evidence, the blood evidence and such that you had mentioned came forward. That's when this stuff came forward. This wasn't evidence of, other than I think there were a couple of them, the incident in, I don't know, was it January of 2002, I think, with the bat, where they actually did call the police. But none of the other times the police were called. In fact, Brind said not to call the police in many of those situations. So these aren't statements which were made at the time, which would then have maybe more of a probative value because there's more reliability in them because they're somewhat contemporaneous with the event that occurred. These are things that came out afterwards, after the state went around interviewing people, attempting to piece this back together to what may have happened at some time around the last week of November of 2006. So is there a time limit within which this evidence becomes relevant and probative? Do you have any case law that supports that argument? I'm sorry, I'm not sure I follow. Well, you're saying some substantial period of time was not these observations or reports were not contemporaneously with the disappearance, so therefore they shouldn't be admissible? Well, no, I think that's one factor, though. I mean, I think it's more of a situation here. Many of the situations, for example, I think Abraham, that was mentioned by the state, many of those cases, the situation that is reported, the situation of abuse that's reported or of violence that's reported happens at some point relatively close. I mean, the statute itself, in fact, says that the proximity to the time of the charge is pretty close. Well, it's a factor, but it's not a factor that precludes automatically. No, not at all, and I'm not advocating for some rule that in all situations, even necessarily all situations where there's a lack of a body, that this be kept out. But I think given the specific circumstances of this situation, I think it's certainly more prejudicial than probative, and I think when you don't have a body, you don't have a certain level of, I mean, you had the experts here to even testify. It could have been gunshot, it could have been bludgeoning, it could have been, we don't really know. We don't know when the blood got there. There's a lot of blood on walls, on ceilings. Some of it wasn't noticed by the police at that time, and when you have a situation like that, I think it becomes more incumbent on the court to be a little more cautious in preventing any possible prejudicial evidence from coming in. You wouldn't necessarily, just because it occurred at a later date, keep that evidence out, but I think in a situation like this, when there were so many instances of it, I believe eight or so, that's the kind of situation when I don't think it would come in. It becomes more prejudicial in the balancing test, more prejudicial than probative. Is it because of the volume of incidents that are being brought in? Well, certainly the volume is going to affect possibly the, you know, you've got, in a few of these actually, one plays off the other. It's three or four different discussions of one or two different incidents. You have things like, well, I heard a lot of arguments during this period of time. I think it was about four times a week, and then I think you had the two women. There wouldn't have been any question about what had occurred had the trial court allowed in Brynn's own statements to the police and her own statements in the order of protection and the divorce filing. There wouldn't have been any question, correct? Any question? About what the relationship was that the defendant had threatened her, threatened to kill her, that he'd make her disappear. Oh, her allegation. So if the state had invoked forfeiture by wrongdoing, which would apparently fit under Giles v. California, would fit here because the defendant was already on probation for two domestic batteries, there would be a logical argument that there was a motive to keep her from going to the police, and all the hearsay statements would come in. But that argument was never made, so the defendant benefited from the trial court's ruling that he wouldn't allow any of the hearsay, so the best evidence was left outside earshot of the jury. Well, I don't think there was any evidence that she was killed as a motive to keep her from testifying against him in some later domestic abuse trial. I don't think that was in any way ever demonstrated. In fact, many of the witnesses said that Brynn didn't want to go to the police. In fact, I think a couple of these, one of the women here said that she took Paul, or took the defendant to get an order, not an order of protection, but a divorce, was going to get a divorce and then changed her mind and didn't. So much of it, I think even the defense, even Brynn's own mother, I believe, testified that when one of these things occurred that they didn't want to go to the police because all of them had been smoking crack or something to that effect. And so I don't think there's any evidence that but for the defendant killing Brynn, Brynn was going to go to the police and file some sort of complaint against the defendant. I think you missed my point. Could be. She was on probation for two domestic batteries, and she had a history, despite what you just articulated, she had a history of going to the police. She did report to the police. She did petition for orders of protection. She did tell family members. She did speak to police officers. She had her body photographed. So there was a history that she would report to the police, despite her statements to family and friends that she didn't want to get them in trouble. She didn't want to go to the police. But it's still something that the state would have had to demonstrate at the time, and they didn't. So I don't think because the state chooses not to proceed in this manner, I don't think you can say that the defendant necessarily benefited from that. But the point is that the trial court excluded that, quote-unquote, testimonial hearsay and never considered the difference by wrongdoing. He allowed in evidence that the state could show through the testimony of witnesses, what they saw, what they heard, and the photographs, and he limited it to that, correct? Right. I have a question. Counsel, a murder case without a body is still an unusual situation. You seem to have suggested that the fact that there was no body found makes the relevance of the other crime's evidence less probative, less relevant, less reliable. Do you have any cases from this or any other jurisdiction that stand for that proposition, that the lack of a body somehow impacts on the admissibility of other crime's evidence? Well, I'm not suggesting that it should necessarily be kept out at all times, but in a situation like this one, where not only do you have a lack of a body, you don't have, I mean, really what you've got is a missing person's report, which was then followed up with certain circumstantial evidence that could suggest that a murder occurred, the blood evidence, things like that, and that it occurred during this period of time. And I think that's really where the problem comes in here is that the court allowed in, for example, the Wilson statements that weren't made contemporaneously. If they had been made contemporaneously in this particular instance, that might have made a difference. That might be more reliable if they called the police and said, I think somebody's getting killed down the street, but they didn't do that. It was more of a case of years later saying, you know, it was around Thanksgiving, we did hear a lot of noise, and from that they proceed. And I think just given the circumstances of this particular case, I think it renders a lot of that testimony to be not very probative, where it otherwise might have been in perhaps a different case. Any other questions? All right, counsel, you will have a chance for reply. Okay, thank you. Counsel? Good morning, Your Honors. I don't really have too much to say in response. I think that our position is pretty well explained in our brief. There's a lot of law that indicates that the common law uses of other crimes was legitimate in this case. I cited a number of cases that seemed to be very factually similar. What about counsel's argument that eight witnesses is just too many, that the State didn't need to introduce all of these witnesses, especially when the defendant is conceding that he's on probation for two domestic batteries? I would say that it's a little... Some of these witnesses testified as to the same events. In our brief, the main events were, I believe, they were September 4th of 2001. That was Daniel Smith talked about the event he saw. On January 3rd, 2002, it was Officer McGaugh and Tracy Bowen and Paula Kirchner. They testified as to a single event. Jennifer Hollinger testified to a 2001 event. So I don't think it's that many. A couple of witnesses did testify to courses of conduct that they saw. That wasn't terribly extensive. That I heard during this, the Wilsons, Judith and Tanya, they testified to fights, I believe. But that was also as part of their testimony that they heard dogs barking and breaking glass, which I think the State's theory would be when the event took place. And then, of course, there was Sheila Belt's testimony about the street altercation. So the defendant's point was that this doesn't show intent, motive, motus operandi. Of course, our position is that it does demonstrate just these points. Counsel, the point was the volume, not what you just recited to us, what they all testified to. The point is, and what the defense counsel was, I think, trying to point out, is that you had multiple witnesses talking over and over about the same events. And isn't the cumulative effect of that prejudicial? I disagree with the defendant's position. As I said, there were like four instances. Is four too many? I don't think so. It was the four specific in-depth instances that made some references to altercations. In light of the Hunt's argument, did you really need, did the State really need to show that much? Your argument is that without a body, the acts of prior domestic violence over-persuaded the jury, and the jury concluded that because he did these events, he must have killed her. I thought that the defendant's argument helped make our case, that you needed these things in order to demonstrate just that fact. That it wasn't, the brain wasn't there to testify, or be cross-examined about what their, the nature of their disagreements or their violence was. What about the defendant's argument that many of these statements were unreliable because they were so dated? The Wilsons, for example, they weren't interviewed for five years. I am not aware of any law that the defendant presented or that I found that indicated that these were unacceptably late. Well, Counsel, there's no case law either that says that they don't become stale. So to simply say there's no case law either way, I think we're asking you what other position you could take that says the statements that are that many years after the event still have the same probative value? Because they certainly are prejudicial. I would have to turn that question around. It was material and relevant evidence. The question is, how does it remain relevant when it is so stale? You keep going around the same question and you're not answering the question. I don't see how a recollection becomes... If a witness who has been tested by cross-examination says, I remember this, and the cross-examination doesn't shake that statement that I do remember this, it is good evidence. You remember events from your past because they happened a long time ago. It doesn't mean that if you recounted them, they're stale or that they're unreliable if they're firmly fixed in your mind and you have confidence that they are accurate recitations of the facts at the time. In sort of a corollary of that, what about his argument that because the instances of alleged abuse were not reported to the authorities contemporaneously with the events in question, it makes their admissibility less reliable and less probative when you balance them on a particular scale you've heard about, you have to balance the prejudicial versus the probative value. So what about that? They were never really reported. Most of these were not reported to the authorities. But you did report incidents. Well, some of these were observed by friends and people in the complex. They weren't all reported to the police, were they? No, that's true, but as I point out in our brief, well, let me rephrase, the cases that we cite in our brief under the common law use of these types of prior acts of violence don't seem to indicate that that's a necessity. And I think that our common knowledge of the relationships between men and women in a marital relationship is sometimes that women are abused, that they sometimes complain and sometimes they don't. You know, it may seem hopeless at times. So court members already make the judgment that you have some instances not reported, allegedly stale. Does that tip the scales at all? This is all for the court to decide. I don't think that the court made an incorrect decision. Again... No abuse of discretion. And for me to say I don't think this is abuse of discretion, well, that doesn't really mean anything. But in case after case, similar instances were not abuses of discretion. That's pretty much all I can say on that point. So if there are no further questions... Thank you very much. Counsel, do you wish to offer a reply? Very briefly. The State has mentioned that they needed the incidents to prove their case. I think that's one of the big problems that we have here is they definitely needed those incidents to prove their case. And when those incidents, I think, are not as... are more prejudicial than probative, that's, I think, where the problem comes in. Although people remember events over time, as you pointed out, only one person here testified to seeing an actual physical altercation. They remembered hearing Brynn tell them things. They remembered others hearing other... Well, actually there were a few witnesses that saw the defendant grab the victim, pull her back into the apartment. Do you recall that witness? Another witness saw... Pulled her out of the apartment. Pulled her back to the apartment as well. There was a witness who came to the... The witness reported that Brynn came to his door and came in and said that the defendant was attacking her and that the defendant had put his arm on the door. But there again, yes, that's what Brynn said, but they didn't see the actual instance of abuse. There's only really one instance of abuse that can be termed as a violent conflict between the two or the defendant against Brynn or however you want to characterize it. You could probably make a circumstantial inference from what maybe some of those other people saw, but only one person saw that... saw the defendant strike Brynn, and that was the person who stopped at the stop sign for 10 minutes during the morning rush. Would you agree that while there were a number of witnesses, the state in its opening statement made no mention of the prior acts of domestic violence, and in their closing argument, just a few pages where they discussed that they did not dwell in either their opening or their closing arguments on the prior acts of domestic abuse. They simply used those incidents to set the stage and to show the jury that this was a violent and turbulent marriage. Correct? Well, they referred to it in closing, right, not opening, but I don't know that they really had to dwell too much on it in closing because once you parade out the eight witnesses in order and say, and this person did this, this person did this, this person did this, or saw this or thinks they saw this, reported someone else told them this, I don't think you need to really dwell too much on it. So there wasn't perhaps dwelling on it, but they certainly referenced those in closing argument. And because of the admission of these improper evidence, we don't believe that the defendant received a fair trial and asked that the case be reversed for a new trial. Did you want to comment at all? I know the state didn't comment, but you didn't comment in your opening remarks about your argument concerning sentencing. Well, I think related, I think it was an excessive sentence because based on the defendant's prior history of, I think, three prior domestic batteries, to have received a sentence not only 30 years above the minimum, you see the 50-year sentence, the range of 20 to 60, but actually five years greater than what the state asked for. And the state, the court seemed to take into account the fact that, once again, the problem I think we have with no body is because there's no body, the defendant must have concealed the body, and we're going to hold the defendant accountable for that and add a couple of decades to his sentence for a crime for which he was not charged, even though, of course, technically he certainly can consider that as, you know, the jury found that a murder had occurred. But I think that situations like that also show that I think his sentence was certainly in excess of what a reasonable sentence should have been under this circumstance. Any other questions? Thank you very much. We'll be in recess until 10 to 9.30.